STATE, WASHINGTON BUILDING AND LOAN ASSOCIATION, PROSECUTORS, v. JOHN HORNBAKER, COLLECTOR OF TAXES OF THE BOROUGH OF WASHINGTON, IN THE COUNTY OF WARREN.

The Washington Building and Loan Association was taxed in 1878, on the return of the secretary, for assets, in the shape of notes, bonds and mortgages, to the amount of $120,700. *Held*—that under the act requiring the property of such corporations to be assessed as the estate of an individual, the amount of loans to stockholders which these notes, bonds and mortgages represent, are assets, and assessable as property of the corporation.

This writ brings up an assessment made upon the property of the prosecutors for taxes for the year 1878. They were assessed for the amount of $120,700 personalty, and $4800 realty. The tax upon the realty has been paid; the tax upon the personalty is attacked.

Argued at June Term, 1879, before Justices SCUDDER, KNAPP and REED.

For the prosecutors, *Oscar Jeffrey.*

For the defendant, *J. M. Van Dyke.*

The opinion of the court was delivered by

REED, J.   The class of corporations in which the prosecutors are included, is now assessed according to the provisions of a supplement to the act concerning corporations, to be found in the laws of 1878, page 61.   This supplement provides that the real and personal estate of every corporation incorporated by any act of the legislature, or by the filing of a certificate, or otherwise, under a general law of this state, shall be taxed the same as the real and personal estate of an individual.

The statute concerning taxes enacts that all real and personal estate in this state, whether owned by individuals or by corporations, shall be liable to taxation at the full and actual value thereof, on the day in each year when by law the assessment is to commence.   *Rev., p.* 1150, § 61.

The contention of the counsel for the prosecutors is that the sum of $120,700 is a gross overestimate of the personalty of this corporation, resulting from a failure to consider the true nature of the alleged assets for which the corporation is assessed.   To understand the contention of counsel it is necessary that the character and object of this corporation should be scanned.

The act under which it is incorporated is entitled " An act to encourage the establishment of mutual loan, homestead and building associations."   It provides that the right to membership in the associations formed under the act, shall consist in a periodical payment of such sums of money at such times as shall be determined by the constitution, or the payment of a principal sum, specified in such constitution, to be repaid by the corporation in such way as shall be designated by the constitution.   The funds of the association shall be invested in lands   *   *   *   or in loans to members, on mortgages of real or personal estate, payable in shares of such company, or by such periodical instalments, or in the redemption of shares, or in all or any of these modes.   .

The constitution of the association provides (art. IV., § 1,) that each stockholder, for each share, shall pay the sum of $1,

and (§ 2) that each stockholder shall pay his proportion of the tax assessed against the company.   Also, (art. IX., §. 1,) that each stockholder shall be entitled to receive a loan of $200 for each share of stock, and (§ 4) that before receiving the same he shall secure the payment by a bond, with warrant of attorney and mortgage, or such other security as the board of directors may deem sufficient, and for each loan of $200 shall transfer one share of stock as collateral security.   Also, (art. XIII.,) whenever the board shall have ascertained that the value of each share amounts to $200,   *   *   *   the owner of each share shall receive the sum of $200, or his own securities to that amount, fully satisfied and discharged of record, and then the association shall close and determine.

It plainly appears, from a survey of the act and the constitution of the society, that a part of its scheme was to collect and fund assets, until the entire amount will divide $200 to each shareholder.

These assets are the result of the payment of the monthly instalments of each stockholder, of premiums paid by successful bidders for loans, and interest upon the same, and the payment of fines and forfeitures imposed by the constitution for failure to promptly pay interest and dues.

The assessor of Washington township, in making his levy for 1878, found that the secretary of this society reported for the year ending December, 1877, as assets, the following: Bonds, mortgages and notes, $117,800; note of C. Mc-Cracken, $23; arrears of dues, fines and interest, $3378.05; value of real estate, $4809.52; arrears of tax of 1874, $37.10; due from treasurer, $107.04.   From this, deductions were claimed for $175 for salary due, and $392.20 for note of William Shield, leaving as net capital stock the sum of $125,587, from which, deducting the value of real estate, leaves, as personal assets, $120,700, or a little over.  The personalty of the corporation was assessed at that figure.

These assets exist in the shape of loans made to stockholders, for which the association holds evidences of indebtedness in the shape of notes, bonds, or mortgages.

The contention of the prosecutors is that the full and actual value of these notes, bonds and mortgages is much less than the figure for which they were assessed. The view advanced is that these loans are to be considered as payments in advance of the future value of the payee's stock, held by the corporation as collateral security, and that the mortgages and bonds are not to secure the repayment of the loan, but the performance of his duty to pay his instalments, &c., so that his shares will be of full value at the time of the dissolution of the corporation. *Clarksville B. & L. Ass'n* v. *Stephens,* 11 *C. E. Green* 351, 355, and cases cited.

It is insisted that the obligation of such stockholder is only to pay his interest and instalments upon his shares of stock for a period of time, but not to pay a principal sum represented by the amount of the loan, and so an assessment of the corporation for the amount of such principal sum is illegal. *State, Howell, pros.,* v. *Cornell,* 2 *Vroom* 374; *State, Rogers, pros.,* v. *Pettit,* 10 *Vroom* 654.

I am unable to adopt this view of the prosecutors' counsel. Whether the sale of money to a stockholder constitutes technically a loan or an advance—whether the bonds or mortgages secured the repayment of the principal sum, or a collateral duty—I think is immaterial in solving the present question.

The object of the existence of the corporation was to gather in money until there could be distributed to each share $200, and also to afford stockholders the privilege of using a portion of such money during the existence of the corporation.

The money which came to the hands of the stockholders was a part of the assets of the association. It remained there as part of such assets. The stockholders pay interest upon the entire sum, for its use, until the dissolution of the society.

If this money is not assets, and so the property of the corporation, then the result is farther reaching than that for which the prosecutor contends. He admits that the corporation should be taxed for the sum of $39,800, which is the

State, W. B. & L. Ass'n, pros., v. Hornbaker.

entire amount yet to be paid in by all the stockholders to make each share worth $200.

If, however, his contention be admitted that the money advanced ceases to be assets, and becomes the property of the stockholder, subject to his duty to pay interest and instalments, then nothing is taxable to the association except such part of interest or such instalment as may be owing at the time of the assessment. *State, Hill, pros.*, v. *Hansom,* 7 *Vroom* 50 ; *State, Wyckoff, pros.*, v. *Jones,* 10 *Vroom* 650.

But it is impossible to read the constitution of this society and assent to the view that these loans ever cease to be assets until the dissolution of the corporation. This is apparent from the language of article nine, section one, relative to the giving of security for these loans, and the assignment of stock as collateral security, and the redelivery of the securities at the close of the corporate existence, as provided for in article thirteen. And in the last-mentioned article, the provision that when the board shall have ascertained that the value of each share amounts to $200, then, &c., is not possible of execution, except upon the idea that all these loans are assets.

If the loans are advances, upon which there is a continuous application of the value of the shares upon which the advances are made, then the shares can have no independent value, because the value is perpetually devoured by its application in part payment of the loan. There is an undoubted right to apply the shares to the payment of the loan at the time of dissolution. Until that time the stockholder's certificate of shares of stock is his property, and the amount of all the loans is the company's property, which, upon complying with certain conditions, the stockholder is permitted to use during the existence of the association. Considering them as assets, which I use as synonymous with property in this case, there was no error in assessing them, apparent on this branch of the prosecutors' exceptions.

This view seems to be the only one not in conflict with the case of *State, Washington B. & L. Ass'n, pros.*, v. *Creveling,* 10 *Vroom* 465. By the writ in that case this same corpora-

tion brought up the tax levied in 1875. The tax was for $101,400, the amount of bonds, mortgages and notes held by the association at that time, representing loans. As the law then was, it was taxable at the full amount of its capital stock paid in, and accumulated surplus.

The court held that the fund which had accrued from monthly payments on shares, from premium and interest on loans, and from fines, was the full amount of capital stock and accumulated surplus. The court held further, that if it should be held that it was a corporation without capital stock, yet it would then by the act be assessable for the full amount of its property and valuable assets, and that that would be measured by the amount of the corporate fund held in the treasury, and so would lead to the same result.

This case was affirmed on error. 11 *Vroom* 192. The second point taken in the opinion in the Supreme Court in that case, directly rules the present question. And, admitting that these loans represented capital stock paid in and accumulated surplus, as ruled in the first point, I do not see how it is possible to avoid holding that it is the property of the corporation, and so taxable under the law now just as it was then. And it would be taxable for the same amount—that is, the amount of capital stock—unless it should be shown that it has depreciated by bad investments, or otherwise, in the hands of the association, so that its present value as property is less than the aggregate of the amount paid in. Nothing is shown in this case to base a claim for any deduction of the assessment upon this ground, and I think the assessment was proper.

The prosecutors also urge that a resolution was passed by the board of directors to credit upon the loans seventy-five per cent. of the amount of each loan. It is sufficient to say that this credit was never made.

It is also urged that the taxation of the amount covered by mortgages was illegal; that such are not assessable against the company, unless the mortgagees made a claim for deduction. *Rev.*, *p.* 1163, § 110. To this I am constrained to say

State, W. B. & L. Ass'n, pros., v. Hornbaker.

—*First*. That if the contention of the prosecutors is true that the mortgages are given, not to secure the repayment of the loan, but to secure the performance of the duty of the stockholder to pay his allowance, then the tax is not upon the mortgage, or a debt secured by a mortgage. *Second*. It does not appear what portion of the assets was secured by mortgages. The assessment was "notes, bonds, mortgages." Nothing in the evidence shows what was, while it appears conclusively that a portion of the assets was not, in that shape. It would be impossible for the court to make a deduction upon this ground upon any intelligent basis. *Third*. It does appear that deductions were claimed for some of these mortgages, but how many does not appear. This raises an additional element of uncertainty. I think, under the circumstances, it was upon the prosecutors to show affirmatively and clearly what portion of the tax was illegal. *State, Cossit, pros., v. Reimenschneider*, 10 *Vroom* 625.

I think the assessment should be affirmed, with costs.